IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| PRO AM AUTOS, LLC<br>t/a HAMPSTEAD PRE-OWNED<br>1111 S. Main Street<br>Hampstead, Maryland 21074 | * <br> * <br> * | |
| And | * | Case No.: |
| ANTHONY BIRDSONG<br>547 Quarrier Court<br>Westminster, Maryland 21158 | * <br> * | |
| Plaintiffs | * | |
| v. | * | |
| PATRIOT PRE-OWNED AUTOS, LLC<br>6201 Reisterstown Road<br>Baltimore, Maryland 21215 | * <br> * | |
| Serve on Resident Agent:<br>  Morris Cogliandolo<br>  13108 Brewers Tavern Terrace<br>  Clarksburg, Maryland 20871 | * <br> * <br> * | |
| and | * | |
| ROY COGLIANDOLO<br>4216 Cherry Valley Drive<br>Olney, Maryland 20832 | * <br> * | |
| and | * | |
| MORRIS COGLIANDOLO<br>13108 Brewers Tavern Terrace<br>Clarksburg, Maryland 20871 | * <br> * | |
| and | * <br> * | |

0119664;1               1

| | |
|---|---|
| **MATTHEW WHITE**<br>311 N. Tannery Road<br>Westminster, Maryland 21157<br><br>**Defendants** | *<br><br>*<br><br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## VERIFIED COMPLAINT

Plaintiff, Pro AM Autos, LLC t/a Hampstead Pre-Owned ("Hampstead" or the "Company"), and Anthony Birdsong ("Birdsong") by counsel, hereby file this Verified Complaint against Defendants Patriot Pre-Owned Autos, LLC ("Patriot"), Roy Cogliandolo ("Roy"), Morris Cogliandolo ("Morris") and Matthew White ("White"), alleging under oath as follows:

## PARTIES

1. Plaintiff Hampstead is a limited liability Company organized and existing under the laws of the State of Maryland, with its principal place of business located in Carroll County, Maryland. It regularly conducts the business of a used car dealership.

2. Plaintiff Birdsong is a resident of Carroll County, Maryland. Birdsong is the sole-member and operator of Hampstead.

3. Defendant Patriot is a limited liability company organized and existing under the laws of the State of Maryland, with its principal place of business located in Baltimore City, Maryland. It regularly conducts the business of a used car dealership.

4. Defendant Roy is a resident of Montgomery County, Maryland. He regularly conducts business in Baltimore City, Maryland. He is a member and operator of Patriot.

5. Defendant Morris is a resident of Montgomery County, Maryland. He regularly conducts business in Baltimore City, Maryland. He is a member, operator and the Resident Agent of Patriot

6. Defendant White is a resident of Carroll County, Maryland. He regularly conducts business in Baltimore City, Maryland. He is a former of employee of Hampstead and is currently an employee of Patriot.

## JURISDICTION AND VENUE

7. The basis for this Court's jurisdiction over this action and Defendants is federal question jurisdiction pursuant to 28 U.S. C. §1331. United States district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States". Further, all parties to this action either reside or conduct regular business in the State of Maryland. Specifically, as averred in the Complaint, Plaintiffs assert two federal causes of action – Count 1 and Count 2, against all of the Defendants for violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C §1030, and violation of the Federal Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq*.

8. Plaintiff's state-law causes of action arise out of the same set of facts as their Federal causes of action and thus are "part of the same case or controversy", such that the United States District Court for the District of Maryland has supplemental jurisdiction over those claims. 28 U. S. C. §1367(a).

## FACTS COMMON TO ALL COUNTS

9. Birdsong is the sole-member and operator of Hampstead which sells and services used automobiles in the State of Maryland.

10. Integral to its operation and success, Hampstead uses and relies upon a customer relationship management system ("CRM"). The CRM, is leased from VIN Solutions, Inc. ("VIN Solutions"), a third-party provider organized in the State of Delaware. It is an electronic tool housed in part in the computers of Hampstead's location and in the "cloud" by VIN Solutions. It is a tool that provides Hampstead management of all aspects of the customer relationship across the entire customer life cycle, spanning marketing, sales, digital commerce and customer service interactions. The CRM provides management of all sales, customer service, business development, recruiting, marketing, or any other line of business management. It stores customer lists, prospective customer contact information, identifies sales opportunities, records service issues and manages marketing campaigns all in one central location. It makes information about every customer and/or prospective interaction available to those authorized by Hampstead or Birdsong. Access to the CRM requires a log in from a specific named individual and a password unique to that individual.

11. Prior to October 6, 2019, White was employed by Hampstead as a salesperson and a Business Development Center ("BDC") manager. At the time of his employment with Hampstead, White was authorized to utilize Hampstead's CRM solely for Hampstead's business purposes. While so authorized, White was issued a password necessary to access the system which was unique to him.

12. Patriot is a used car dealership located in Baltimore City. It is owned and operated by Morris and Roy. Patriot has its own CRM separate and distinct from the one utilized by Hampstead.

13. Roy and Morris are brothers. They are cousins of Birdsong.

14. Beginning on or about October 1, 2019, Roy and Morris borrowed monies from Birdsong for the business purposes of Patriot. They requested loans on more than one occasion. The various loans exceeded Four Hundred Thousand Dollars ($400,000.00). During this time, Roy, Morris and Birdsong began a discussion of Birdsong either purchasing Patriot or managing the sales activities of Patriot for compensation.

15. On or about September 16, 2019, Roy and Morris on the one hand and Birdsong on the other hand, made an oral agreement that Birdsong, in addition to his duties at Hampstead, would help run the business of Patriot. Birdsong commenced working with Patriot on or about September 20, 2019 and ended his relationship with Patriot and White on or about June 1, 2019.

16. During the period of time Birdsong was working with Patriot, pursuant to the oral agreement, Birdsong agreed to transfer White to Patriot in order to help with sales and the management of Patriot. During that time, White was an employee of Patriot, and, on two or three occasions was specifically authorized by Birdsong to access the Hampstead CRM solely for the limited purposes of setting up processes that Birdsong had created for Hampstead's CRM (e.g. The scheduling and timing of letters and follow up letters to customers and prospective customers and content of those types of marketing activities). White was not authorized to "steal" customer lists or prospective customer lists or send emails from the system.

17. White, in fact, accessed the Hampstead CRM through a computer or computers located at Patriot with the I.P. address of 50.210.140.41 using his unique log in credentials. White further, on at least one occasion accessed the Hampstead CRM, with the limited permission and authorization from Birdsong described above, from I.P. addresses 73.134.21.193 and 74.200.116.50. White never had authority or permission to send information to any email

address, including his personal email address, or to use customer leads to help him meet his sales quota at Patriot.

18. On or before January 1, 2021 Morris, Roy, Patriot and White on the one hand, and Birdsong on the other hand, terminated their business relationship. That termination was memorialized in writing on January 13, 2021. The termination was caused by Defendants' false allegations against Birdsong, and was characterized by Defendants' ill will, improper motivation and/or evil purpose. More specifically, Defendants accused Birdsong of false representations concerning his contributions to Patriot under the oral agreement referred to hereinabove. They began a name calling campaign including, but not limited to, referring to him as a liar on issues of his contribution to Patriot, a "fat fuck", and threatening to sue him for Two Million Dollars ($2,000,000.00), for false and imaginary reasons. They accused him of being dirty and greedy, made false claims that he harassed them, making false claims that he threatened their employees, told him to "go fuck yourself with a big dildo", called him a "miserable fuck face", and other such conduct exhibiting their ill will, malicious, willful, and intentional conduct, all without legal justification or excuse. Further, without justification or legal excuse, Morris, Roy and Patriot threatened not to pay him back for the monies he loaned them.

19. At termination, all prior limited authorization and permissions to use the Hampstead CRM were revoked and discontinued. There were no further authorization and/or permissions of any kind given to White, Morris, Roy or Patriot.

20. White elected to remain employed at Patriot. Subsequent to the termination of all business relationships between Patriot, Morris, Roy, White and Birdsong, White, without authorization or permission, hacked into the Hampstead CRM on January 27, 2021 at 9:18 am from I.P. address 50.210.140.41 and again without permission or authorization hacked into the

Hampstead CRM on January 27, 2021 at 11:10 am from I.P. address 50.210.140.41. That I.P. address is used by Patriot.

21. During the above referenced hacking incidents, White downloaded and emailed information from the Hampstead CRM. On information and belief White expropriated customer lists belonging solely to Hampstead, marketing information on prospective customers owned solely by Hampstead and other proprietary and confidential information for Patriot's use with the knowledge and consent of Morris and Roy.

22. In subsequent text communications between Birdsong and Roy, and Birdsong and White, both Roy and White admitted to the unauthorized access of Hampstead's CRM, but characterized them as a "mistake". They offered no explanation for the downloads and/or the emails, and specifically refused to produce copies thereof. Further, they were unwilling to state the nature or content of the downloads and/or emails.

23. Birdsong contacted VIN Solutions and spoke with its Performance Manager, Jim Knapp, and learned that the unauthorized accesses of Hampstead's CRM included downloads and emails. Mr. Knapp could not, at that time, observe the content of the downloads and/or emails.

24. Despite numerous attempts by Birdsong to learn the content of the downloads and emails, Defendants have failed and refused to provide the content.

### COUNT 1
### VIOLATION OF THE FEDERAL COMPUTER FRAUD
### AND ABUSE ACT – 18 U.S. CODE §1030
### (Against all Defendants)

25. Plaintiffs incorporate herein by reference its factual allegations set forth above.

26. The Federal Computer Fraud and Abuse Act ("CFAA") prohibits certain unauthorized uses of computers and computer systems, including:

- "access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] .... information considered financial information as such terms are defined in the Fair Credit Reporting Act";

- "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value";

- "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage";

- "whoever knowingly causes the transmission of a program, information, code or command, as a result of such conduct, intentionally causes damage without authorization, to a protected computer";

- "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss";

- "knowingly and with intent to defraud traffic[king] .... In any password or similar information through which a computer may be accessed without authorization, if ... such trafficking affects interstate or foreign commerce"; and

See 18 U.S. Code §1030.

27. The CFAA also prohibits persons from "conspir[ing] to commit or attempting to commit" any of the above offenses. Id.

28. The CFAA authorizes "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA] [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief". Id.

29. Each and all of the Defendants violated some or all of the above prohibitions, either personally or in conspiracy with the other Defendants, as set forth more particularly above.

30. The emails, documents, and data, including passwords, that the Defendants tampered with, deleted, trafficked, and/or stole were very valuable, and their loss has been very disruptive and costly.

## COUNT II
### VIOLATION OF THE FEDERAL ELECTRONIC COMMUNICATIONS PRIVACY ACT – 18 U.S. CODE §2510 ET SEQ.
**(Against all Defendants)**

31. Plaintiffs incorporate herein by reference its factual allegations set forth above.

32. The Federal Electronic Communications Privacy Act ("ECPA") prohibits persons from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or written communication". See 18 U.S. Code § 2511.

33. The ECPA authorizes "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter [to] in a civil action recover from the person or entity … which engaged in that violation such relief as may be appropriate". See 18 U.S. Code § 2520. The relief available under the ECPA includes " such preliminary and other equitable or declaratory relief as may be appropriate; damages under subsection (c) and punitive damages in appropriate cases; and a reasonable attorneys' fee and other litigation costs reasonably incurred." See id. Damages awardable under ECPA are "the greater of the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or statutory damages of whichever is the greater of $100 a day for each day of the violation or $10,000". See id.

34. Each and all of the Defendants violated the above prohibitions, whether personally or in conspiracy with the other Defendants, as set forth more particularly above.

## COUNT III
### PRELIMINARY AND FINAL INJUNCTION
**(Against All Defendants)**

35. Plaintiffs incorporate herein by reference its factual allegations set forth above.

36. Each and all of the Defendants, either personally or in conspiracy with the other

Defendants, as set forth more particularly above, especially in ¶¶ 20-24, on more than one occasion, hacked into Hampstead's secured CRM without authorization, and tampered with, copied, downloaded, deleted, and/or stole Hampstead's data, documents, client information and prospective client information as more specifically described in ¶ 10; and disseminated Hampstead's confidential and privileged information among the Defendants, at their request and direction. The Defendants all allowed, supported, received and used for the benefit of Patriot the data downloaded and/or stolen from Hampstead's secure CRM.

37. The data that the Defendants downloaded and/or stole, and is now in possession of Defendants, is valuable data to the business operation of Hampstead. Hampstead has been irreparably harmed by the Defendants possession of this data. The Defendants, on the other hand, will not be harmed if they are enjoined from their misconduct, including their unauthorized retention of Hampstead's documents and data. Hampstead is likely to prevail on its claims that Defendants' invasion and theft of Hampstead's documents and data was unlawful. An injunction would be consistent with the public interest, as expressed in the CFAA and the ECPA, of protecting the integrity of computers and computer systems and the privacy of secured information.

38. Accordingly, Hampstead and Birdsong request both preliminary and permanent injunctive relief to remedy the Defendants' unauthorized downloads and/or thefts of Hampstead's data.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS/ECONOMIC RELATIONS
## MARYLAND COMMON LAW
### (Against All Defendants)

39. Plaintiffs incorporate herein by reference all factual allegations set forth above

40. The acts of Defendants described herein were intentional and willful

41. The acts of Defendants described herein were calculated to cause damage to the Plaintiffs and their lawful busines.

42. The acts of Defendants were done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the Defendants.

43. The acts of the Defendants were done with actual malice, without right or justifiable cause on their part.

44. The acts of the Defendants described herein caused the Plaintiffs actual damage and loss resulting therefrom. More particularly, Defendants improper hacking of Plaintiffs' CRM was done for the purpose of "stealing" Plaintiffs' customer lists, customer contacts and leads, prospective customer contacts and leads and to otherwise damage Plaintiffs and to benefit themselves.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE
## MARYLAND COMMON LAW
### (Against All Defendants)

45. Plaintiffs incorporate herein by reference all factual allegations set forth above

46. The acts of Defendants described herein were intentional and willful

47. The acts of Defendants described herein were calculated to cause damage to the Plaintiffs in their lawful business

48. The acts of Defendants were done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of Defendants.

49. The acts of the Defendants were done with actual malice, without right or justifiable cause on their part.

50. The acts of Defendants described herein caused the Plaintiffs actual damage and loss resulting therefrom. More particularly, Defendants improper hacking of Plaintiffs' CRM was done for the purpose of "stealing" Plaintiffs customer lists, customer contacts and leads, prospective customer contacts and leads and to otherwise damage Plaintiffs and to benefit themselves.

## COUNT VI
## CONVERSION
## MARYLAND COMMON LAW
### (Against All Defendants)

51. Plaintiffs incorporate herein by reference all factual allegations set forth above.

52. The acts of Defendants described herein were intentional and willful.

53. The acts of the Defendants constituted the taking of personal property in possession of the Defendants.

54. The acts of Defendants described herein were without permission or justification.

55. The acts of the Defendants resulted in the exercise of dominion over Hampstead's CRM.

56. The Plaintiffs were in actual possession of the Hampstead CRM and data within it at the time of Defendant's hack into the system.

57. The acts of the Defendants described herein caused damages and harm to Plaintiffs and to the secured data of the CRM.

58. The acts of the Defendants were done with actual malice, without right or justifiable cause on their part.

## COUNT VII
## TRESPASS TO CHATTELS
## MARYLAND COMMON LAW
**(Against All Defendants)**

59. Plaintiffs incorporate herein by reference all factual allegations set forth above.

60. The acts of the Defendants occurred without authority or justification.

61. The acts of the Defendants were willful and intentional

62. The acts of the Defendants dispossessed, used and/or intermeddled with the CRM and its data owned and in possession of Plaintiffs.

63. The acts of the Defendants described herein caused damages and harm to Plaintiffs and to the secured data of the CRM.

64. The acts of the Defendants were done with actual malice, without right or justifiable cause on their part.

## COUNT VIII
## CIVIL CONSPIRACY
## MARYLAND COMMON LAW
**(Against All Defendants)**

65. Plaintiffs incorporate herein by reference all factual allegations set forth above.

66. The acts of the Defendants as described herein and in particularly the hacking of Plaintiffs' CRM and removing data by downloads and emails were done by agreement and/or an understanding by all Defendants.

67. The act of hacking into the system without permission or authorization was unlawful and or tortious done in the furtherance of the conspiracy and/or the use of unlawful or tortious means to accomplish said act.

68. The acts of Defendants caused legal damage resulting to Plaintiffs.

69. The acts of the Defendants were done with actual malice, without right or justifiable cause on their part.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1. An award of compensatory damages in an amount to be proven at trial, but not less than One Million Dollars ($1,000,000.00);

2. An award of punitive damages not less than Five Million Dollars ($5,000,000.00) pursuant to Section 18 U.S.C. §2520, and as may be otherwise allowed by law;

3. An award of attorneys' fees and costs pursuant to 18 U.S.C. §2520, and as may otherwise be allowed by law;

4. An award of preliminary and permanent injunctive relief, including an order for forensic inspections of the Defendants' computer and/or computer systems to locate and retrieve Hampstead's emails, documents, and data, with the Defendants to bear all costs of the inspection;

5. An award of constructive trusts on the Defendants' property (including all Consumer Acceptance Corporation (CAC) pools), to the extent of the misappropriation of Hampstead's property; and

6. Such other and further relief as the Court deems proper.

*[Signature]*

Steven R. Freeman (# 02927)
Freeman Rauch, LLC
409 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 842-6600 - phone
(410) 825-1316 - fax
srf@freemanrauch.com

Attorneys for Plaintiffs Anthony Birdsong and
Pro AM Autos, LLC t/a Hampstead Pre-Owned

## VERIFICATION

I solemnly affirm under the penalty of perjury that the factual allegations contained in the foregoing Verified Complaint are true to the best of my knowledge, information and belief.

February 17, 2021                            *[Signature]*
                                              Anthony Birdsong

STATE OF MARYLAND

SUBSCRIBED AND SWORN TO me this 17th day of February, 2021.

*[Signature]*
Notary Public

My commission expires: 4/19/2022

*[Notary seal: VALARIE A. FERGUSON, NOTARY PUBLIC, BALTIMORE COUNTY, MD]*

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38, Plaintiffs demand a trial by jury on all matters triable by a jury.

*[Signature]*
Steven R. Freeman (# 02927)